IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK CRAIG, ) | |
| ) | No. 08 C 2275 |
| Plaintiff, ) | |
| ) | Judge Anderson |
| v. ) | |
| ) | Magistrate Judge Keys |
| CITY OF CHICAGO, Chicago Police Officers ) | |
| BRUCE KISCHNER (20282), PHILLIP BROWN ) | |
| (20362), JOHN HILLMAN (20753), GARY ) | |
| HUGHES (10709), RANDALL DARLIN (1198), ) | |
| ARTHUR DAVIS (6308), PABLO MARIANO (6691), ) | |
| CHRIS BLUM (6121), MATTHEW SCOTT (5180), ) | |
| and DANIEL MCNAMARA (7766), ) | |
| ) | |
| ) | |
| Defendants. ) | Jury Trial Demanded |

**AMENDED COMPLAINT**

Plaintiff, FRANK CRAIG, through his attorneys, makes the following complaint against Defendants CITY OF CHICAGO, ILLINOIS ("Defendant City") and Chicago Police Officers BRUCE KISCHNER, PHILLIP BROWN, JOHN HILLMAN, GARY HUGHES, RANDALL DARLIN, ARTHUR DAVIS, PABLO MARIANO, CHRIS BLUM, MATTHEW SCOTT, and DANIEL MCNAMARA ("Defendant Officers"):

**JURISDICTION & VENUE**

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims occurred within this district.

**PARTIES**

4. Plaintiff FRANK CRAIG is a forty-five-year-old African-American resident of the City of Chicago, Illinois, and a United States Army veteran with 25 years of service to this country.

5. At all relevant times, Defendant Officers were Chicago police officers employed by Defendant City and acting under color of law and within the scope of their employment.

6. Defendant City is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times was the employer and principal of Defendant Officers.

**FACTS**

7. On January 18, 2006, an armed robbery occurred in Chicago. Defendants, Chicago Police Officers Scott and McNamara, and Detectives Kischner, Brown and Hillman, conducted the investigation into that robbery.

8. Following the robbery, the victim reported to the police the license plate number of the car driven by the robber and a general description of the robbers including that both were African American males, one his 30's and one in his 20's.

9. Within minutes of the victim's call, the police were able to identify the car used in the robbery as belonging to a rental car agency.

10. Defendants Scott and McNamara monitored the report of the robbery over the radio and sometime later went to the 14th district station and retrieved a copy of the report.

11. Defendants Scott and McNamara investigated the rental car and learned that it had been rented to a woman named Jane Craig, who resided in California.

12. At some point in the two days following the robbery, Defendants Scott and McNamara contacted the rental car company and learned that the car used in the robbery had already been returned to the rental company.

13. Defendants Scott and McNamara went to the location where the rental car had been returned and observed a security camera video of the rental car used in the robbery being returned. The video depicted three persons returning the rental car, two women and one African American male in his 20's.

14. Defendants Scott and McNamara did not preserve the security video depicting persons returning the rental car that was used in the January 18th robbery.

15. No reports or notes by Defendants Scott and McNamara regarding their investigation into the rental car exist.

16. Defendants Scott and McNamara contacted Jane Craig by telephone. When confronted regarding the rental car, Ms. Craig became abusive toward the officers and then hung up the telephone.

17. Defendants Scott and McNamara ran a search of the CLEAR and CHIPS system for any reports regarding Jane Craig of the car rental.

18. In their search, they located a previous incident report filed with the Chicago Police Department in 2000 in which Jane Craig was the victim of a stolen vehicle and a "Frank Craig" was listed as another owner of the vehicle.

19. Defendants Scott and McNamara then performed a search of a police database for all persons with the name "Frank Craig" in Chicago.

20. The Plaintiff Frank Craig was one of the persons that appeared in their computerized search.

21. Plaintiff Frank Craig had no relationship or connection to Jane Craig and was not the Frank Craig listed in the 2000 stolen vehicle report with Jane Craig.

22. The Frank Craig of the 2000 stolen vehicle report was deceased at the time of the 2006 robbery.

23. Defendants Scott and McNamara knew that Plaintiff Frank Craig was not depicted in the video of the rental car that was used in the robbery.

24. Despite this information, Defendants Scott and McNamara put together a "photo array" with Plaintiff Frank Craig as the suspect.

25. Defendants Scott and McNamara reviewed several booking photographs of Frank Craig going back more than a decade. Defendants Scott and McNamara selected one from 1997 despite the availability of more recent photographs (including one taken just the year before).

26. Six photographs were included in the photo array. Except for the selected photograph of Plaintiff, all five of the other photographs were of men who appeared visibly older than the Plaintiff did in the 1997 photograph.

27. The robbery victim had described the robber as being his is mid-30s. Plaintiff was 44 years old at the time of the incident, but was 34 years old in the 1997 photograph selected by the Defendants.

28. Of the six photos in the photo-lineup, Plaintiff's picture was the only picture of someone in his 30's.

29. Defendants Scott and McNamara showed their six-person photo array to the victim.

30. Because of the suggestive photo array, the victim mistakenly identified Plaintiff as the robber.

31. After the suggestive identification, Defendants Scott and McNamara learned and knew that Plaintiff had no relationship or any connection to Jane Craig and had no evidence that connected Plaintiff to the rental car or the robbery aside from the suggestive photo-array.

32. Defendants Scott and McNamara did not effectuate Plaintiff Frank Craig's arrest despite knowing his address.

33. More than three months later, on April 30, 2006, without any further investigation or evidence, Defendant Detective Kischner issued an "investigative alert" for Plaintiff.

34. On May 1, 2006, Defendant Officers Darlin, Hughes, Davis, Mariano, and Blum entered Plaintiff's home without consent, warrant or legal justification.

35. Plaintiff's fiancé, Russia Scott, specifically objected to the police officers entering their home. Defendant Officers Darlin, Hughes, Davis, Mariano, and Blum ignored Ms. Scott's protests and pushed into the home.

36. Hearing the commotion of the officers inside his home, Plaintiff came downstairs.

37. By the time that Plaintiff came downstairs, Russia Scott had already called "9-1-1" and requested assistance because the police refused to leave their home.

38. Defendant Officers Darlin, Hughes, Davis, Mariano, and Blum continued to ignore Ms. Scott's demands that they leave her house, and when they saw Plaintiff Frank Craig, one or more of them pushed her down and arrested Plaintiff Frank Craig in his home.

39. Defendant Officers charged Plaintiff with armed robbery, a crime which he did not commit and had absolutely no involvement.

40. As a result of Defendant Officers misconduct, Plaintiff was unjustly incarcerated for approximately one month before he was able to raise the $25,000 he needed to post bond.

41. Defendants Kishner, Brown, Hillman, McNamara and Scott misled the criminal prosecution of Plaintiff by providing incomplete and misleading information to the State's Attorney's Office and withholding exculpatory evidence, including but not limited to that regarding of the lack of connection between Frank Craig and Jane Craig, the improper suggestiveness with which they conducted the photo-lineup, the lack of connection of Frank Craig to the person seen in the video-tape, and the false suggestion that Frank Craig was connected to the rental car, all in order to improperly and falsely connect Plaintiff to the January 18th robbery.

42. After defending himself for nearly a year and a half against these false charges, Plaintiff was forced to stand trial in the Circuit Court of Cook County. After a bench trial, Plaintiff was acquitted of all charges.

## Count I: False Arrest

43. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

44. As more fully described above, the Defendant Officers arrested Plaintiff and/or caused Plaintiff to be arrested without a warrant, probable cause, or any other legal justification to do so.

45. Further, in pursuing the arrest and criminal charges against Plaintiff, the misrepresented the evidence and/or caused the evidence to be misrepresented to the criminal prosecutors.

46. This arrest was in violation of Plaintiff's rights as secured by the Fourth Amendment to the United State's Constitution.

47. As a direct and proximate result of this false arrest, Plaintiff has suffered extensive damages, including but not limited to physical, emotional and economic injuries.

**Count II: Illegal Entry**

48. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

49. Defendants Darlin, Hughes, Davis, Mariano, and Blum entered Plaintiff's home without consent, warrant or legal justification and arrested Plaintiff therein.

50. This conduct by the Defendant Officers violated Plaintiff's rights as secured by the Fourth Amendment to the United State's Constitution.

51. As a direct and proximate result of this false arrest, Plaintiff has suffered extensive damages, including but not limited to physical, emotional and economic injuries.

**Count III: Due Process**

52. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

53. Defendant Officers Kishner, Brown, Hillman, McNamara, and Scott withheld material exculpatory information and evidence from prosecutors and the court in violation of Plaintiff's right to due process under the Fourteenth Amendment to the Constitution.

54. As a direct and proximate result of Defendants' violation of his right to due process, Plaintiff has suffered damages, including but not limited to emotional and economic injuries.

**Count IV: Failure to Intervene**

55. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

56. During the arrest and criminal prosecution of Plaintiff, as described more fully above, one or more of the Defendant Officers stood by and watched without intervening to prevent the violations of Plaintiff's constitutional rights.

57. These officers had a reasonable opportunity to prevent the harm had they been so inclined, but failed to do so.

58.  As a result of the failure of these Defendant Officers to intervene to prevent violations of Plaintiff's constitutional rights, Plaintiff suffered extensive damages, including but not limited to emotional and economic injuries.

## Count V:  Conspiracy

59.  Each of the foregoing Paragraphs is incorporated as if restated fully herein.

60.  As more fully alleged above, Defendant Officers expressly or impliedly agreed and conspired to violate Plaintiff's constitutional rights as secured by the Fourth and Fourteenth Amendments to the United State's Constitution, and engaged in actions as described above in furtherance of this conspiracy.

61.  As a direct and proximate result of Defendant Officers' conspiratorial misconduct, Plaintiff suffered extensive damages, including but not limited to emotional and economic injuries.

## Count VI: Illinois Malicious Prosecution

62.  Each of the foregoing Paragraphs is incorporated as if restated fully herein.

63.   As more fully stated above, Defendants Kischner, Brown, Hillman, McNamara, and Scott caused criminal proceedings against Plaintiff to be commenced with malice, without probable cause, and knowing that Plaintiff was not guilty of the crime for which he had been charged.

64.  Plaintiff was acquitted of all charges in manner indicative of Plaintiff's innocence, which fully and finally terminated the case in Plaintiff's favor.

65.  As a direct and proximate result of this illegal and malicious conduct, Plaintiff has suffered extensive damages, including but not limited to physical, emotional and economic damages.

66. Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

67. At all relevant times, Defendant Officers were agents of Defendant City, and acting within the scope of their employment as a Chicago Police Officers. Defendant City, therefore, is liable as principal for all torts committed by Defendant Officers.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages for the injuries that he has suffered, costs and reasonable attorneys' fees, punitive damages against the individual Defendant Officers and all such other relief as this Court finds just and equitable.

RESPECTFULLY SUBMITTED,

/s/ Amanda Antholt
One of the Attorneys for Plaintiff

Amanda Antholt
Christopher Smith
Smith, Johnson & Antholt LLC
112 S. Sangamon Street, 3rd Floor
Chicago, IL 60607
312.432.0400

Tony Thedford
David N. Selmer
11 S. LaSalle Street, Suite 1000
Chicago, IL 60603
773.752.6950/773.294.7852